UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| ANDREA SALONGA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AEGIS SENIOR COMMUNITIES, LLC, and Does 1 through 20, inclusive,<br><br>Defendants. | Case No. 22-cv-00525-LB<br><br>**ORDER DENYING MOTION TO REMAND**<br><br>Re: ECF No. 19 |

## INTRODUCTION

The plaintiff, Andrea Salonga, filed this wage-and-hour class-action complaint in California state court.[1] The defendant, Aegis Senior Communities, LLC, removed the case to federal court under the Class Action Fairness Act (CAFA).[2] Contending that the defendant did not establish that the amount in controversy exceeds the CAFA threshold of $5 million, the plaintiff moved to remand the case to state court.[3] In response, the defendant — based on declarations from its Chief Financial

---

[1] Compl., Ex. A to Notice of Removal – ECF No. 1 at 23–43. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Notice of Removal – ECF No. 1 at 1–17.

[3] Mot. to Remand – ECF No. 19.

ORDER – No. 22-cv-00525-LB

Officer and a consultant with expertise in data analytics — calculated potential damages of $13,847,446 to $30,124,183.[4]

The defendant has demonstrated with summary-judgment-type evidence that the potential damages for the waiting-time, wage-statement, and meal-and-rest-period claims exceed $5 million and thus has satisfied CAFA jurisdiction. The court denies the motion to remand.

**STATEMENT**

The plaintiff filed this employment class action in Alameda County Superior Court in November 2021.[5] The complaint has seven claims against the defendant, an operator of assisted-living facilities, for violating the following: (1) California Labor Code §§ 1182.12, 1194, 1194.2, 1197 (minimum wage); (2) California Labor Code §§ 510, 1194, 1198 (overtime); (3) California Labor Code §§ 226.7, 512 (meal periods); (4) California Labor Code § 226.7 (rest breaks); (5) California Labor Code §§ 2800, 2802 (business-expense reimbursement); (6) California Labor Code § 226 (accurate wage statements); (7) California Labor Code §§ 201, 202, 203 (wages due on separation); and (8) California Business and Professions Code §§ 17200, *et seq.* (unfair business practices).[6] The defendant removed the case to federal court under CAFA thirty days after it was served.[7]

The plaintiff moved to remand, arguing that the defendant failed to establish that the amount in controversy exceeds $5 million.[8] In response, the defendant submitted declaration2 from Levon Massmanian (a consultant with a degree in economics and experience performing data analysis) and Amy Nelson (the defendant's Chief Financial Officer) to support its removal.[9]

---

[4] Opp'n – ECF No. 30; Massmanian Decl. – ECF No. 30-1 at 14 (¶ 22); Nelson Decl. – ECF No. 30-2.
[5] Compl. – ECF No. 1 at 23.
[6] *Id.* at 32–42 (¶¶ 37–101).
[7] Notice of Removal – ECF No. 1 at 3; Ranen Decl. in Supp. of Notice of Removal – ECF No. 1-2 at 2 (¶ 7).
[8] Mot. – ECF No. 19 at 3–4.
[9] Notice of Removal – ECF No. 1 at 2; Massmanian Decl. – ECF No. 30-1 at 3–4 (¶ 2); Nelson Decl. – ECF No. 30-2 at 2 (¶ 1).

1   Ms. Nelson collected payroll data for the defendant's nonexempt employees from between
2   May 20, 2017, and March 2022 and provided that data to defense counsel.[10] Mr. Massmanian
3   reviewed and analyzed the data and estimated the possible damages for the plaintiff's claims.[11]
4   Because some claims involve uncertain variables that affect damages (*e.g.*, the percentage of shifts
5   where an employee was improperly denied a rest break), Mr. Massmanian arrived at a range for
6   the amount in controversy: $13,847,446 to $30,124,183.[12] The plaintiff has not produced any
7   evidence refuting the defendant's estimate but challenges the defendant's assumptions and the
8   adequacy of the defendant's evidence.[13]

9   The parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636(c).[14] The court
10  held a hearing on May 5, 2022.

## ANALYSIS

The parties do not dispute that the class includes 100 or more putative class members or that minimal diversity exists.[15] The only issue is whether the defendant has established that the amount in controversy meets the jurisdictional threshold for removal under CAFA.

**1. Legal Standards**

**1.1   Removal Jurisdiction**

Title 28 U.S.C. § 1441(a) provides that a defendant may remove a case to federal court if the plaintiff could have filed the case initially in federal court based on federal-question or diversity jurisdiction. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). District courts are courts of limited jurisdiction and, therefore, generally construe the removal statute strictly and reject federal

---

[10] Nelson Decl. – ECF No. 30-2 at 2 (¶¶ 2–6).
[11] Massmanian Decl. – ECF No. 30-1 at 4–5 (¶¶ 4–6).
[12] *Id.* at 9, 11–12, 14 (¶¶ 13, 17–18, 22).
[13] Reply – ECF No. 32.
[14] Consents – ECF Nos. 8, 12.
[15] Mot. to Remand – ECF No. 19; Reply – ECF No. 32.

ORDER – No. 22-cv-00525-LB           3

jurisdiction if there is any doubt as to the right of removal. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). On removal, the removing party has the burden of establishing the court's jurisdiction. *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988). Some of the strict presumptions against federal jurisdiction are, however, relaxed when CAFA is the basis for jurisdiction.

### 1.2   CAFA Jurisdiction

When a case is removed under CAFA, it is incorrect for the court to view removal with "skepticism and resistance." *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 993 (9th Cir. 2022). Under CAFA, federal district courts have original jurisdiction over class actions where (1) the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, (2) the class contains 100 or more putative class members, and (3) there is at least minimal diversity between the parties. 28 U.S.C. § 1332(d). The $5-million jurisdictional minimum may be based on aggregation of the claims of all potential class members. *Id.* § 1332(d)(6).

A defendant's notice of removal under CAFA need include only "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," and not evidentiary submissions. *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014)). Evidentiary submissions are not required unless the plaintiff contests, or the court questions, the defendant's allegations. *Dart Cherokee*, 574 U.S. at 89. If the plaintiff contests the amount in controversy, and the complaint does not include a facially apparent amount in controversy, "both sides submit proof," and "the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Chin v. Cole Haan, LLC*, No. 16-cv-02154-JD, 2016 WL 7211841, at *1 (N.D. Cal. Dec. 13, 2016) (quoting *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015)); *see Ibarra*, 775 F.3d at 1199.

When removal is based on CAFA jurisdiction, there is "no antiremoval presumption." *Dart Cherokee*, 574 U.S. at 89. But the removing party bears the burden of proving that jurisdiction is proper and "persuad[ing] the court that the estimate of damages in controversy is a reasonable one." *Chin*, 2016 WL 7211841, at *1 (quoting *Ibarra*, 775 F.3d at 1197). In this respect, a

defendant removing under CAFA may satisfy its burden of establishing jurisdiction by relying "'on a chain of reasoning that includes assumptions to satisfy its burden to prove by a preponderance of the evidence that the amount in controversy exceeds $5 million,' as long as the reasoning and underlying assumptions are reasonable." *Jauregui*, 28 F.4th at 993 (quoting *LaCross*, 775 F.3d at 1201. Furthermore, if a defendant relies on assumptions that the court disagrees with, "the district court should consider the claim under [a] better assumption—not just zero-out the claim." *Id.* at 996.

In addition to the defendant's reasoning and assumptions, CAFA's requirements are tested by "real evidence" under procedures entrusted to the district court's discretion. *Ibarra*, 775 F.3d at 1198–1200. "The parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Id.* at 1197 (cleaned up). For example, "a declaration submitted by a company employee attesting to a review of business records can constitute competent evidence supporting amount-in-controversy calculations." *Ramirez v. HV Glob. Mgmt. Corp.*, No. 21-cv-09955-BLF, 2022 WL 1210402, at *3 (N.D. Cal. Apr. 25, 2022) (citing *Jauregui*, 28 F.4th at 992). The procedural minimum is that both parties should have "a fair opportunity to submit proof." *Ibarra*, 775 F.3d at 1200.

### 2. The Amount-in-Controversy Requirement

The amount in controversy means the "amount at stake and does not mean likely or probable liability; rather, it refers to possible liability." *Jauregui*, 28 F.4th at 994 (cleaned up). Given that the defendant need only show that its possible liability exceeds $5 million, the court addresses the claims in order from the highest to lowest potential liability until the jurisdictional threshold is met.

#### 2.1 Waiting-Time Penalties for Wages Not Paid on Separation

The plaintiff alleges that the defendant violated California Labor Code §§ 201 and 202 by failing to pay all wages due on separation.[16] Specifically, the plaintiff alleges that the defendant

---

[16] Compl. – ECF No. 1 at 39–40 (¶¶ 86–91).

ORDER – No. 22-cv-00525-LB          5

failed to pay members of the "Waiting Time Subclass" — which includes all employees terminated between May 30, 2018, and the date of class certification — appropriate wages on separation.[17] California law provides that the penalty for violating the above-referenced sections is the employee's wages "from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Cal. Lab. Code § 203.

The defendant has submitted a declaration stating that 2,087 employees were terminated on or after May 30, 2018.[18] Thus, the Waiting Time Subclass includes 2,087 potential members.[19] The defendant's economist calculated the possible damages by "taking the final hourly rate of each former employee at termination and then multiplying that rate by the average daily hours worked by that employee and then multiplying by 30 days."[20] To provide a foundation for his calculation, the defendant's economist stated that he reviewed "a preliminary employee list, timekeeping data, and payroll data."[21]

The plaintiff raises three arguments in response. First, she claims that the "waiting time penalties stopped accruing in this matter when the Complaint was filed on November 24, 2021."[22] Second, the plaintiff claims that even though the defendant identified the average wage of the entire class, its calculation is flawed because it did not separately identify the average wage of the Waiting Time Subclass.[23] Finally, the plaintiff argues that there is no evidence supporting a 100-percent violation rate.[24] These arguments do not undermine the defendant's calculation.

### 2.1.1 Waiting Time Subclass Size

Regarding the size of the Waiting Time Subclass, if 2,087 employees were terminated between May 30, 2018 and April 4, 2022 (the date the defendant's supporting declaration was executed),

---

[17] *Id.* at 27 (¶ 21).
[18] Massmanian Decl. – ECF No. 30-1 at 13 (¶ 20).
[19] *Id.*
[20] *Id.*
[21] *Id.* at 4 (¶ 3).
[22] Reply – ECF No. 32 at 7.
[23] *Id.* at 14.
[24] *Id.* at 11.

then an average of 1.4854 employees were terminated per day between May 30, 2018 and April 4, 2022 (1405 days).[25] Therefore, if the plaintiff is correct and the waiting-time penalties stopped accruing on November 24, 2021, then the relevant class should be reduced by approximately 194 employees because there are 131 days between November 24, 2021 and April 4, 2022 and multiplying 131 by 1.4854 yields a product of 194. This accounts for employees terminated after the complaint was filed. This reasoning would reduce the class to 1893 members.

There is, however, another problem with the defendant's calculation. The full thirty-day multiplier would not be accurate for employees terminated fewer than thirty days before the complaint was filed.[26] For example, an employee terminated only five days before the complaint was filed would be owed a penalty in the amount of their wage multiplied by their average hours worked multiplied by five days (not thirty days). The easiest and most conservative way to account for this issue is to assume that no employees were fired within the thirty days preceding the date the complaint was filed. October 25, 2021 was thirty days before the complaint was filed on November 24, 2021 and there are 161 days between October 25, 2021 and April 4, 2022 (the date of the defendant's supporting declaration). Multiplying 161 by 1.4854 (the average number of employees terminated per day) yields 239.15. Thus, reducing the relevant class by 239 employees accounts for the possibility that class members would not accrue penalties over the full thirty days before the complaint was filed or at any time since the complaint was filed.

To determine how this might affect the defendant's damages estimate, consider the percentage reduction in the class size. Reducing the Waiting Time Subclass by 239 amounts to a 11.45 percent reduction in the Waiting Time Subclass.[27] Reducing the estimated waiting-time penalty damages by 11.45 percent approximates how the plaintiff's arguments would impact the defendant's damages estimate. Applying an 11.45-percent reduction to claimed damages of

---

[25] Massmanian Decl. – ECF No. 30-1 at 6 (¶ 8) ("2,087 [employees] were terminated over the period spanning May 30, 2018 to present.").

[26] Reply – ECF No. 32 at 7–8.

[27] 239/2,087 = .1145.

ORDER – No. 22-cv-00525-LB                7

$7,152,420 yields a damages estimate of $6,333,467.91.[28] Moreover, even applying a twenty-five percent reduction to account for the uncertainty created by the defendant's failure to specifically exclude employees after October 25, 2021 yields damages in the amount of $5,364,315, which is still well above the jurisdictional threshold.[29]

### 2.1.2  Waiting Time Subclass Average Hourly Wages

The plaintiff also relies on the defendant's failure to identify the specific average wages for the Waiting Time Subclass.[30] Applying the average California minimum wage illuminates how the wage amounts might impact damages. Between 2018 and 2022, the average California minimum wage was $12.50 per hour.[31] *Cal. Dep't Indus. Rels.*, Schedule for California Minimum Wage rate 2017–2023, https://www.dir.ca.gov/dlse/faq_minimumwage.htm (last visited May 2, 2022). Multiplying the reduced Waiting Time Subclass of 1,848 (2,087 minus 239) by the average California minimum wage between 2018 and 2021 ($12.50) and 7.61 hours (the average shift length) would result in potential penalties of $5,266,800.[32] In short, even after applying conservative estimates to the size of the putative class and the applicable wage and recalculating the possible penalties under California Labor Code § 203, the potential damages still exceed the $5-million jurisdictional threshold.

### 2.1.3  One-Hundred Percent Violation Rate

Concerning the 100-percent violation rate, courts in this district and others within the Ninth Circuit have accepted a 100-percent violation rate where the plaintiff has (1) tied waiting-time penalties to other claims and (2) the defendant specifically accounts for only terminated employees. *Trigueros v. Stanford Fed. Credit Union*, No. 21-cv-01079-BLF, 2021 WL 2649241,

---

[28] $7,152,420 x .8855 = $6,333,467.91.

[29] $7,152,420 x .75 = $5,364,315.

[30] Reply – ECF No. 32 at 7–14.

[31] The minimum wage for employers with more than 26 employees in 2018, 2019, 2020, and 2021, was, respectively, $11, $12, $13, and $14 per hour. The average is $12.50 per hour (($11 + $12 + $13 + $14)/5 = $12.50.

[32] 1,848 x $12.5 x 7.61 = $5,266,800; Massmanian Decl. – ECF No. 30-1 at 6 (¶ 9) (identifying average shift length).

ORDER – No. 22-cv-00525-LB     8

1    at *6 (N.D. Cal. June 28, 2021) ("Because Plaintiff has tied her waiting period claims to her other

2    claims, and because Defendant specifically accounts for only terminated employees in its use of a

3    100% violation rate, the Court finds Defendant's estimate[] . . . plausible and supported by a

4    preponderance of the evidence."); *see also Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d

5    1141, 1149 (C.D. Cal. 2010) ("[C]ourts have assumed a 100% violation rate in calculating the

6    amount in controversy when the complaint does not allege a more precise calculation.")

7    (collecting cases), *aff'd*, 631 F.3d 1010 (9th Cir. 2011); *but see Ramirez*, 2022 WL 1210402, at

8    *6–7 ("[T]he Court would be in good company in finding a 100% violation rate to be reasonable

9    and supported by a preponderance of the evidence" but applying a twenty-five percent violation

10   rate to wage-statement and waiting-time claims).

11   Here, the defendant's use of a 100-percent violation rate is justified. The defendant's

12   calculation includes only terminated employees.[33] Furthermore, the plaintiff's complaint includes

13   an allegation that the defendant "willfully failed to pay the Waiting Time Subclass all their earned

14   wages upon termination, including, but not limited to, proper minimum wage and overtime

15   compensation, meal period premiums, and rest period premiums."[34] This allegation — which is

16   almost identical to the relevant allegation in *Trigueros* — ties the waiting-time penalties to other

17   claims. 2021 WL 2649241, at *6 (quoting the plaintiff's allegation that "class members were

18   entitled to receive all wages owed to them upon discharge or resignation, including overtime and

19   minimum wages and meal-and-rest-period premiums, and they did not, in fact, receive all such

20   wages owed to them at the time of their discharge or resignation").

21   The plaintiff also challenges the 100-percent violation rate based on the decision in *Naranjo v.*

22   *Spectrum Sec. Servs., Inc.*, where the California Court of Appeal held that independent waiting-

23   time and wage-statement claims could not be derived from meal-and-rest-break claims. 40 Cal.

24   App. 5th 444, 474 (2019) ("Accordingly, we hold that section 226.7 actions do not entitle

---

[33] Massmanian Decl. – ECF No. 30-1 at 13 (¶ 20).

[34] Compl. – ECF No. 1 at 39 (¶ 88).

employees to pursue the derivative penalties in sections 203 and 226."), *review granted*, 455 P.3d 704 (Jan. 2, 2020). The plaintiff's argument is not persuasive.

First, the California Supreme Court is reviewing *Naranjo*, and thus the decision is non-binding. *Bates v. Leprino Foods Co.*, No. 2:20-cv-00700 AWI BAM, 2020 WL 6392562, at *5 (E.D. Cal. Nov. 2, 2020) ("While the California Supreme Court's review in *Naranjo* is pending, the court of appeal's decision (although not ordered de-published by the California Supreme Court) 'has no binding or precedential effect, and may be cited for potentially persuasive value only.'") (quoting Cal. R. Ct. 8.1115(e)(1)); *see also* Docket, *Naranjo v. Spectrum Sec. Servs., Inc.*, Cal. Sup. Ct. Case No. S258966 (cause argued and submitted March 1, 2022).

Second, even if the California Supreme Court curtails derivative wage-statement and waiting-time claims in *Naranjo*, minimum-wage and overtime violations are still be a proper basis for derivative waiting-time penalties. *See Kaanaana v. Barrett Bus. Servs., Inc.*, 29 Cal. App. 5th 778, 810 (2018) ("Because this [a minimum wage violation] is a proper basis for plaintiffs' claim for waiting time penalties under section 203, we must reverse the trial court's judgment[.]"), *aff'd*, 11 Cal. 5th 158 (2021); *Maldonado v. Epsilon Plastics, Inc.*, 22 Cal. App. 5th 1308, 1337 (2018) (holding that "only the absence of the hours worked will give rise to an inference of injury" for purposes of a derivate wage-statement claim); *see also Yeomans v. World Fin. Grp. Ins. Agency, Inc.*, No. 19-cv-00792-EMC, 2022 WL 844152, at *6 (N.D. Cal. Mar. 22, 2022) ("[C]ourts in this district have repeatedly found that section 226 claims are adequately pleaded even if they are derivative of other wage and hour claims.") (collecting cases).

The plaintiff has not identified any additional reasons why the defendant's evidence is incorrect or why capping the possible waiting-time violation rate at less than 100 percent is merited. Instead, the plaintiff cites several cases, including *Rodriguez v. Caliber Holdings Corp.*, No. 2:21-cv-03351-RGK-AFM, 2021 WL 2567995 (C.D. Cal. June 23, 2021), and *Dunn v. SHC Servs., Inc.*, No. 1:21-cv-00744-NONE-SAB, 2021 WL 5122057 (E.D. Cal. Nov. 4, 2021), where courts have declined to assume 100-percent violation rates.[35] The reasoning from these cases is not persuasive here.

---

[35] Reply – ECF No. 32 at 15.

ORDER – No. 22-cv-00525-LB              10

1    For example, the plaintiff in *Rodriguez* did not allege, as the plaintiff did here, minimum-wage
2    and overtime violations. 2021 WL 2567995, at *2–3 ("Defendants reason that every single
3    employee whose employment was terminated during the statutory period missed at least one meal
4    and one rest break per week during their employment."). Here, the inclusion of minimum-wage
5    and overtime allegations strengthens the assumption that every pay statement included a violation
6    and reduces the relevance of the *Naranjo* bar on deriving wage-statement and waiting-time claims
7    from meal-and-rest-break claims.

In *Dunn*, other problems beyond an assumed 100-percent violation rate undermined the defendant's violation-rate estimate. For example, in *Dunn*, the defendant's declaration "offer[ed] no corroborating evidence or methodology for its claimed average hourly and overtime wages of the class, subclass size, aggregate weeks, or aggregate shifts lasting longer than six hours." 2021 WL 5122057, at *7. The *Dunn* court held that the defendant's declaration did not support any of the variables (*e.g.*, average hourly rate and average workday length) supporting the possible waiting-time damages. *Id.* at *17–18 ("Defendant has presented no evidence to show its employees normally worked an eight-hour shift per day."). Here, the defendant has submitted a declaration from its consultant describing a methodology and identifying critical information such as the number of terminated employees, the average shift length, and the number of pay periods.[36] Thus, neither *Dunn* nor *Rodriguez* establishes that the defendant's use of an assumed 100-percent violation rate is unreasonable in this case.

It is fair to require the defendant to present evidence establishing the size of the potential class and the average wages at issue because the defendant has access to this information. But requiring the defendant to produce evidence establishing a violation rate with precision would come too close to requiring the defendant to prove its own liability. *Amaya v. Consol. Container Co.*, No. 2:15-cv-03369-SVW-PLA, 2015 WL 4574909, at *2 (C.D. Cal. July 28, 2015) ("[D]efendants should not be required to fall on their swords to establish the propriety of removal jurisdiction.").

---

[36] Massmanian Decl. – ECF No. 30-1 at 5, 12–14 (¶¶ 7, 19–21).

ORDER – No. 22-cv-00525-LB            11

United States District Court
Northern District of California

In view of the foregoing, the defendant has established that the possible waiting-time damages amount to at least $5,266,800, an amount above the jurisdictional threshold. Nonetheless, the court considers the next highest valued claim, the wage-statement claim, to further evaluate the amount in controversy.

### 2.2 Wage-Statement Claims

California Labor Code § 226 requires that employers provide accurate wage statements. The maximum statutory penalty for violating § 226 is $4,000 per employee. Cal. Lab. Code § 226(e)(1). The plaintiff alleges that, "[d]uring the relevant time period, Defendants have knowingly and intentionally failed to comply with Labor Code § 226(a) on wage statements that were provided to Plaintiff and Class Members" and has sought damages for this claim "not exceeding four thousand dollars ($4,000.00) per employee."[37]

To calculate possible damages, the defendant declares that there have been 44,369 pay periods associated with 1,920 different employees since May 30, 2020 (accounting for the applicable one-year limitations period provided by California Code of Civil Procedure § 340(a)).[38] Applying the $50 for the initial violation and a $100 penalty for subsequent violations up to the $4,000 maximum, the defendant contends that the possible damages for this claim total $3,958,850.[39] Although the defendant's economist did not include the precise calculation in the supporting declaration, it is not the case that the defendant simply multiplied the number of employees by the $4,000 maximum without accounting for employees who may not have worked enough pay periods to reach the statutory maximum, because 1,920 times $4,000 would be $7,689,000 or almost double the defendant's estimate. Thus, the defendant's calculation appears reasonable. *See Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) ("Where a statutory maximum is specified, courts may consider the maximum statutory penalty available in

---

[37] Compl. – ECF No. 1 at 38–39 (¶¶ 82, 84).

[38] Massmanian Decl. – ECF No. 30-1 at 13–14 (¶ 21); Opp'n – ECF No. 30 at 19.

[39] Massmanian Decl. – ECF No. 30-1 at 13–14 (¶ 21).

ORDER – No. 22-cv-00525-LB                12

determining whether the jurisdictional amount in controversy requirement is met.") (citing *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1046 n.3 (9th Cir. 2000)).

Nonetheless, the plaintiff objects to the use of the statutory maximum in the defendant's calculation. She points out that in *Garibay v. Archstone Communities LLC*, the Ninth Circuit held that assumptions unsupported by evidence could not establish the amount in controversy for purposes of satisfying the CAFA jurisdictional minimum. 539 F. App'x 763, 764 (9th Cir. 2013) ("[The defendant] assumes that each employee would be entitled to the maximum statutory penalty, but provides no evidence supporting that assertion."). The plaintiff's reliance on *Garibay* is, however, not helpful.

First, *Garibay* is an unpublished non-binding opinion that other courts in this district have declined to follow in view of conflicting published Ninth Circuit decisions. *See Moore v. Addus HealthCare, Inc.*, No. 19-cv-01519-HSG, 2019 WL 3686584, at *4 (N.D. Cal. Aug. 7, 2019) ("[I]t [*Garibay*] has no precedential weight as an unpublished opinion . . . . [and] to the extent *Garibay* requires removing defendants to submit evidence of liability to prove up a maximum-penalty calculation, it appears to be inconsistent with published Ninth Circuit opinions.") (citing *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010)); *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1041 n.4 (N.D. Cal. 2014) (declining to follow *Garibay*). Second, there is tension between *Garibay* and the Ninth Circuit's decision in *Jauregui*, which was published just two months ago. In *Jauregui*, the court held that it was "incorrect" to view removal under CAFA with "skepticism and resistance" and said that it was "inappropriate [to] demand . . . certitude from [the defendant] over its assumptions used in calculating the amount in controversy." *Jauregui*, 28 F.4th at 993. Based on the reasoning from *Jauregui* and the decisions conflicting with *Garibay*, the defendant's use of the statutory maximum to calculate the potential wage-statement damages is appropriate in this case.

By applying the statutory maximum to the actual number of nonexempt employees and the number of pay periods during the relevant time, the defendant has established that the possible damages for the wage-statement claim are $3,958,850.

**2.3   Rest and Meal Break Violations Claims**

The plaintiff alleges that the defendant violated California Labor Code § 226.7 by failing to provide meal-and-rest breaks.[40] The defendant's consultant analyzed payroll data and calculated the potential meal-break damages at $682,145 after identifying 38,659 shifts with a potential meal-break issue.[41] The plaintiff does not challenge this calculation.[42]

Regarding rest breaks, the defendant's consultant estimated rest-break damages at between $1,610,342 and $16,103,417, depending on whether there were violations in ten percent or one-hundred percent of eligible shifts.[43] According to the declaration submitted by the defendant's consultant, there is no data in the defendant's payroll data concerning whether rest breaks were authorized on eligible shifts.[44] The defendant contends that a violation rate of ten to twenty percent is reasonable.[45] The plaintiff has not challenged the defendant's methodology but asserts that assuming a ten-percent violation rate is unjustified.[46]

Courts have held that a twenty-five percent assumed meal-and-rest-period violation rate is reasonable where the complaint alleges a "pattern or practice" of violations. *Ramirez*, 2022 WL 1210402, at *5 (collecting cases). Here, the plaintiff alleges that the defendant "engaged in a systematic pattern of wage and hour violations under the California Labor Code."[47] Accordingly, the defendant's twenty-percent assumed violation rate is reasonable. According to the defendant's declaration, a twenty-percent violation rate would result in damages of $3,220,683.[48] Therefore, the potential meal-and-rest-period liability totals $3,902,828 ($682,145 plus $3,220,683).

---

[40] Compl. – ECF No. 1 at 34–36 (¶¶ 56–71).

[41] Massmanian Decl. – ECF No. 30-1 at 7 (¶ 11).

[42] Reply – ECF No. 32 at 7.

[43] Massmanian Decl. – ECF No. 30-1 at 9 (¶ 13).

[44] *Id* at 8 (¶ 12).

[45] Opp'n – ECF No. 30 at 16 ("[A]ssuming a modest 20% rest period violation rate as the high range, the amount in controversy for Plaintiff's rest period claim is at least $3,220,683 in rest period premiums, exclusive of interest.").

[46] Reply – ECF No. 32 at 12.

[47] Compl. – ECF No. 1 at 24 (¶ 3).

[48] Massmanian Decl. – ECF No. 30-1 at 9 (¶ 13).

### 2.4   Total Amount in Controversy

The defendant's estimate of the waiting-time and wage-statement penalties is supported by summary-judgment-type evidence in the form of two declarations and the estimate equals an amount that is more than the jurisdictional minimum. Furthermore, even if the waiting-time and wage-statement claims are reduced by seventy-five percent to account for the twenty-five percent violation rate applied by some courts (*e.g.*, *Ramirez*), that would not reduce the amount in controversy to $5 million or less. 2022 WL 1210402, at *6–7 (applying twenty-five percent violation rates).

For example, twenty-five percent of the waiting-time penalties is $1,316,700 (.25 x $5,266,800) and twenty-five percent of the wage-statement penalties is $989,712.50 (.25 x $3,958,850). Adding the rest-break and meal-break liability to these amounts yields $6,209,240.50, still well in excess of the jurisdictional minimum. The defendant has met its burden and it is unnecessary to consider the potential damages on the plaintiff's other four claims or the potentially recoverable attorney's fees.

## CONCLUSION

The court denies the plaintiff's motion to remand. This disposes of ECF No. 19.

**IT IS SO ORDERED.**

Dated: May 6, 2022

LAUREL BEELER
United States Magistrate Judge